IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN J. MURPHY,<br>　　　Plaintiff | :<br>:<br>:<br>: |
| v. | :　USDC NO. : 11-4743<br>: |
| RADNOR TOWNSHIP,<br>　　　Defendant | :　(Filed Electronically)<br>:<br>:　<u>Jury Trial Demanded</u> |

## PLAINTIFF'S PRETRIAL MEMORANDUM

Plaintiff, JOHN J. MURPHY, by and through his attorneys, Borland and Borland, L.L.P. and David P. Tomaszewski, Esquire, hereby provides the following Pretrial Memorandum:

### (1)   Nature of Action and Basis of Jurisdiction

This action is authorized, initiated, founded upon, and arises under the provisions of federal law, particularly the Uniformed Services Employment and Reemployment Act, 38 U.S.C.A. § 4301 *et seq.* (hereinafter "USERRA"), as well as the Pennsylvania Military Affairs Act, as amended, 51 Pa. C.S.A. § 7309 *et seq.*, as well any common law failure to hire claim derived from the public policy underlying the aforesaid statute. The jurisdiction of this Court is invoked pursuant to the provisions of 28 U.S.C. §§1331 and 38 U.S.C. § 4301 *et seq.* as well as this Court's pendent jurisdiction to adjudicate related state law claims.

**(2)** <u>**Statement of Facts**</u>

The Plaintiff, John J. Murphy entered the Air Force in 1997 and served on full-time active duty until September of 2002. From September of 2002 to the present, he has served in the Active Reserves, currently holding the rank of Major.

Mr. Murphy was hired in July of 2002 as Deputy Administrator for the city of Wilkes-Barre, Pennsylvania, and held that position until January of 2004 when he was promoted to City Administrator. He held that position until March of 2010, when he decided to start his own consulting firm.

During his employment with the city of Wilkes-Barre, Mr. Murphy was deployed as part of his duty in the Active Reserves, from March to October of 2008 in Djibouti, Africa. He performed the duties of Director of the Personnel Recovery Center, Combined Task Force, in the horn of Africa, where he coordinated search and rescue operations in fourteen countries. He also served as Watch Supervisor, Air Force Rescue Coordination Center- Tyndall AFB, Virginia.

His duties as Deputy Administrator of the city of Wilkes-Barre included assisting in the running of city government, drafting the emergency operation plan, being involved in day to day financial matters while working closely with the finance officer, coming up with budget and revenue ideas, and ensuring all departments ran efficiently.

As the City Administrator, Mr. Murphy ran the day to day operations of the city, with all department heads reporting to him. He hired a grant writer with

whom he worked closely, and was extremely successful in grant applications. He dealt with financial issues, with the finance officer reporting to him, and had the full realm of responsibilities for a three hundred plus employee operation in a full service city.

In June of 2009, Mr. Murphy applied for the position of Township Manager for the Defendant. This was a national search with approximately seventy applicants. Mr. Murphy was contacted by John Granger, Defendant's Interim Township Manager, who informed Mr. Murphy that he was one of eight finalists selected for an interview, and that he was impressed with his military background and experience with the city of Wilkes-Barre. Mr. Granger stated that Mr. Murphy was exactly what Radnor needed in terms of ethical leadership, in response to previous ethical problems of the prior manager. Mr. Granger said he would rather have someone with leadership and military background with ethics, rather than someone just bringing in financial expertise.

Mr. Murphy's interview was held July 22, 2009. The interview lasted approximately forty five minutes, and was attended by Interim Manager Granger and Commissioners Masterson, Fisher, Hervada, and Mahony. At the interview, Board President Masterson "grilled" Mr. Murphy regarding his military commitments. Masterson spent at least ten minutes questioning Mr. Murphy on how his municipality could deal with his military commitments or even afford to deal with it, having the manager gone for that length of time. Mr. Murphy had mentioned that he would be gone approximately thirty five days per year.

Because the questioning regarding Mr. Murphy's military commitments was becoming so extensive, Interim Manager Granger was compelled to intervene. Granger remembers that Master was the lead questioner as with every candidate. Masterson admitted that he and Fisher took the lead on behalf of the board.

Granger remembers that the board wanted to know how long he served, what were his commitments, and what were his duties. They wanted to know how many times he would be called up as an active reservist, and how those requirements compared to that of reservist police officers. They wanted to know how long he would be away from his job because of his military commitments. Masterson specifically asked how many days he was away per year, how often he was gone, and how his city operated when he was gone. Granger became concerned about the legality of the commissioners' questions and felt compelled to inform the board about the law which requires townships to allow reservists to fulfill their active duty requirements. This is the same law that forms the basis of the case at bar.

Granger's concern was that he knew "there's a line in the sand" regarding what questions can be asked regarding military service, and he did not know where that line was. Granger felt that they had enough information and was concerned about the legality of the questions the board was asking. He was not sure if they had gone over the line to improper questioning. Granger confirmed that the gist of what he told the board was "Shut up. That was it." He wanted that line of questioning to stop before they possibly broke the law, if they had not

already done so. After he told the board to "shut up" they did not do so, but changed the tone of the questioning to what Mr. Murphy did in his past service.

Mr. Murphy sensed that it really did not matter what answers he gave in terms of municipal management experience, and that his interview was deteriorating because of the possibility of him being gone from Radnor for thirty five days per year. Because of that, he said he would be willing to go on inactive reserves to get the position.

On July 27, 2009, Mr. Granger returned Mr. Murphy's message regarding the results of his interview. Granger informed that Mr. Murphy was one of the top four candidates, but that they were only going to interview three, and that they were not going to hire him because some of the commissioners had serious concerns about his ongoing military obligations. Mr. Murphy was outraged that his military service and ongoing military obligations prevented him from receiving a second interview and immediately told Mayor Leighton, his wife, brother and parents of his conversation with Mr. Granger.

Mr. Murphy then had his attorney contact the Defendant, informing it that Mr. Murphy's ongoing military obligations could not legally prevent him from proceeding in the hiring process, and requested that Mr. Murphy be given a second interview. That request was rejected.

Mr. Granger was authorized to contact the candidates, including Mr. Murphy, regarding whether they were to get a second interview.

Mr. Granger was involved in the administrative portion of the hiring process and also had input as to who should be hired. Commissioner Hervada

was sure Mr. Granger gave his opinion on who should be interviewed. According to Commissioner Mahoney, Granger was a trusted confidant of the board, and his opinions on any matters were voiced and taken into consideration. His opinions were taken into consideration throughout the hiring process and were considered by the board as to who would get a second interview. He was at all executive sessions and had input into all the decisions the board made at the time, as any township manager would.

Candidates Kraynik and Miller received second interviews, which were social events held at a restaurant in a local hotel, also attended by the family members of the candidates and commissioners. It was a social interview, with past jobs and performance not really discussed. Commissioner Spingler described it as a social dinner, where we just chatted and talked and had a nice time.

Miller received the first offer, and he rejected it. Kraynic was then offered the job and he rejected it.

The board then decided to interview Christopher Canavan, who was originally rejected for a second interview. Commissioner Shapiro was very negative regarding Mr. Canavan, as he was currently teaching at Villanova. Mr. Canavan last job as Township Manager was for sixteen months, ending in July of 2003 for Towemencin Township, supervising only 50 employees. Previously he was Township manager of Upper Providence Township for three years managing only 25 full-time employees. He previously was acting Township Manager for Gwynedd Township for 6 months in 1997. Overlapping his acting Township

6

Manager role was a two and one half year period as Assistant Township Manager ending in 1999. Since 2004, he worked for a private land developer. Canavan was given an offer. Commissioner Spingler testified "Whatever he wanted, that's what we offered." Canavan still rejected the offer.

In late 2009, with Interim Manager Granger soon leaving his position, the Defendant offered the interim manager job to Mr. Janssen, which offer was shortly withdrawn due to irregularities in his background.

Candidate Zienkowski, who previously pulled his name from consideration after his first interview for personal reasons, then let it be known that he was now interested in the job. He was given a second interview, a "social dinner, just like we had with the others." He was offered the job and accepted it. Thus, every candidate who was offered a second interview was ultimately offered the job as Township Manager.

(3) **Damages**

See attached damage analysis

(4) **Witnesses**

J.J. Murphy – Plaintiff – Liability and damages
219 East Jemez Street, Hobbs, NM 88240

Colleen Murphy – Liability and damages
219 East Jemez Street, Hobbs, NM 8824

Margaret Murphy – Liability
204 Mill Street, Unit 403, Bristol, Pa.  19007

Jack Murphy – Liability
204 Mill Street, Unit 403, Bristol, Pa.  19007

Thomas Leighton – Liability
138 Reliance Drive, Wilkes-Barre, Pa. 18702

Patrick Murphy – Liability
6414 N. Radcliffe Street, Bristol, Pa.  19007

John Granger – Liability
134 Stump Road, Chalfont, Pa.  18914

Thomas Masterson – Liability and Damages
1635 Market Street, 3rd Floor, Philadelphia, Pa.  19103

Harry G. (Hank) Mahoney – Liability and Damages
301 Iven Avenue, Wayne, Pa.  19807

John Fisher – Liability and Damages
301 Iven Avenue, Wayne, Pa.  19807

Kevin Higgins – Liability and Damages
301 Iven Avenue, Wayne, Pa. 19807

William Spingler – Liability and Damages
301 Iven Avenue, Wayne, Pa.  19807

Enrique Hervada – Liability and Damages
810 Colony Road, Bryn Mawr, Pa.  19101

Robert A. Zienkowski - Liability and Damages
301 Iven Avenue, Wayne, Pa.  19807

Dan Olpere – Liability
112 Cathedral Drive, North Wales, Pa.  19454

(5)  **Schedule of Exhibits**

See attached schedule of exhibits

(6)  **Estimate of Length of Trial**

Three days

(7)  **Special Comments regarding Legal Issues, Stipulations, Amendment of Pleadings, or other Appropriate Matters**

Plaintiff desires a stipulation as to the authenticity and admissibility of his exhibits. Plaintiff also desires a stipulation regarding the wages and benefits of Radnor's Township Manager, Robert Zienkowski, since his hire in 2010.

>
> RESPECTFULLY SUBMITTED:
> Borland and Borland, L.L.P.
>
>
> By: /s/ David P. Tomaszewski
> DAVID P. TOMASZEWSKI, ESQUIRE
> 69 Public Square, 11th Floor
> Wilkes-Barre, PA  18701
> (570) 822-3311
> Fax (570) 822-9894
> Attorney for Plaintiff, John J. Murphy

## PLAINTIFF'S DAMAGE ANALYSIS

### I. Lost back pay and benefits beginning as of 9/1/09

    A.    Back Pay

Radnor Township Manager's rate of pay - $182,000.00/yr or $15,166.67/month or $700/day for 260 work days or $87.50/hr

    B.    Benefits

        Cost of health, eye, and dental insurance – to be provided by defendant

        Cost of $100,000.00 group term life policy – to be provided by defendant

        Cost of two memberships in municipal manager organizations – to be provided by defendant

        Cost of attendance of two annual conferences for the International City Management Association or other professional manager organization- to be provided by defendant

        20 vacation days/year at $700/day = $14,000/yr

        300 sick hours/year at $87.50/hr = $26,250/yr

        9 paid holidays at $700/day = $6300/yr

        5 bereavement leave days at $700/day = $3,500/yr

        5 personal days at $700/day = $3,500/yr

        Pension = 5% of yearly income = $9,100/yr

Total yearly compensation lost = $244,650 plus cost of life insurance, health, eye, and dental insurance, memberships and conferences.

Total monthly compensation lost = $20,387.50 plus costs

**Total lost compensation and benefits to Feb. 28, 2014= 54 months X $20,387.50 = $1,100,925.00 plus costs of life insurance, health, eye, and dental insurance, memberships, conferences, and any other change in benefits- to be supplied by the defendant.**

### II. Mitigation

    A.    Income received

        City of Wilkes-Barre = $85,118.16/yr or $7,093.18/month or $327.38/day

        15 Vacation days/year at $327.38/day = $4,910/yr

15 Sick days/year at $327.38/day = $4,910/yr

Employer contribution to cost of Health Insurance = $14,400/yr

**Total yearly compensation from the city of Wilkes-Barre = $109,338.16 or $9,111.51/month**

### 2009

9/1/09-3/30/10 = $9,111.51/month X 7 months = $63,780.57

### 2010

2010 income from Goals Consulting = $18,174

### 2011

2011 income from Goals Consulting = $25,396

### 2012

2012 income from City Manager job – Hobbs, NM – DOE 8/23/12

| | |
|---|---|
| Salary | $140,000/yr or $11,666.67/mo. or $538.46/day or $67.31/hr |
| 401a contribution (15%) | $21,000/yr or $1,750/mo |
| Paid Time Off 15 hrs/mo. | $12,115.80/yr |
| 11 paid holidays | $5,923.06/yr |
| Medical Ins. | $13,215.54 |
| Dental Ins. | $491.04 |
| Basic Life insurance | $54.00 |
| Total yearly compensation $16,066.62/mo. | $192,799.44/yr or |

2012 compensation = 16,066.62 X4.25 months = $68,283.14

2012 income from Goals Consulting = $24,330

**Total 2012 earnings**     **$92,613.14**

### 2013

2013 Income from City Manager job – Hobbs NM

(raised to $165,000/yr as of Sept. 1, 2013)

401a contributions (15%) ended on 5/31/13, with employer switching to 13.15%contribution to NM state pension system.

January 2013 to May 31, 2013 = 5 months X $16,066.62/mo. = $80,333.10

June 1, 2013 to August 31, 2013 with employer pension contribution reduced to $18,410/yr or $1,534.17/mo. from $1,750/mo = $215.83 reduction. = $15,851.49/month X 3 months =$79,257.45

Sept. 1, 2013 to Dec. 31, 2013

$165,000/yr= $13,750/mo.= $634.62/day = $79.33/hr

Paid time off increased to 18 hrs/month = $1,427.94/month

Revised monthly income =$2,083.33 +418.29 = $2,501.62 monthly increase  + $15,851.49 + 2501.62= $18,353.11/month X 4 months = $73,412.44

Mr. Murphy also received a payment in mid 2013 of $50,000.00 which must be paid back proportionately if he leaves Hobbs within 10 years. Therefore $2,500 is earmarked for 2013 earnings.

2013 income from Goals Consulting = $5,000 (estimated)

**Total 2013 earnings $240,502.99**

**2014**

2014 earnings from City Manager Job – Hobbs, NM

January 1, 2014 to February 28, 2014

2 months X $18,353.11 = $36,706.22

1/6 of $5,000 portion of previous $50,000.00 payment = $833.33

**Total 2014 earnings $37,535.55**

**Total Mitigation from 9/1/09 to 2/28/14 = $478,002.25**

### III.   Lost Compensation minus mitigation

$1,100,925.00 - $478,002.25 = **$622,922.28**, plus costs of life insurance, health, eye, and dental insurance, memberships and conferences and other changes in benefits to be supplied by Defendant.

## IV.   Liquidated Damages

Equal to the lost compensation minus mitigation = **$622,922.28 plus costs of life insurance, health, eye, and dental insurance, memberships and conferences.**

## V.   Front Pay

To be calculated by the court if reinstatement not feasible

## VI.   Attorney's Fees and costs through trial

Estimated attorney's fees and costs through trial - **$100,000.00**

## VII.   Total Damages

**Total damages are $1,245,844.45 plus double the cost of Defendant's life insurance, health, eye, and dental insurance, memberships and conferences to be supplied by the Defendant, plus attorney's fees and costs.**

**CASE CAPTION: MURPHY V. RADNOR TOWNSHIP**

**EASTERN DISTRICT OF PENNSYLVANIA**

**LIST OF EXHIBITS**

**CASE NUMBER: 11-4743**

**JUDGE: THE HONORABLE PETRESE B. TUCKER**

| PTF ³ | DFT ³ | DESCRIPTION OF OBJECT OR ITEM | ³ IDENTIFIED | ³ EVIDENCE | ³ RULING | ³ WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 1 | | Job Posting – Radnor Township Manager | | | | |
| 2 | | Murphy Job Application and Attached Materials | | | | |
| 3 | | Murphy Notes – July 27, 2009 | | | | |
| 4 | | Letter from Goodman to Masterson and Granger dated August 24, 2009 | | | | |
| 5 | | Letter from Morris to Goodman – 9/1/09 | | | | |
| 6 | | Letter from Goodman to Morris-9/18/09 | | | | |
| 7 | | Letter from Morris to Goodman – 9/25/09 | | | | |
| 8 | | Main Line Media News Article – 10/28/09 | | | | |
| 9 | | Main Line Media News Article – 6/24/09 | | | | |
| 10 | | Radnor Twp. Organizational Flowchart | | | | |
| 11 | | Murphy 2009 Earnings Information | | | | |
| 12 | | Murphy 2010 Earnings Information | | | | |
| 13 | | Murphy 2011 Earnings Information | | | | |
| 14 | | Murphy 2012 Earnings Information | | | | |
| 15 | | Murphy 2013 Earnings Information | | | | |

| PTF [3] | DFT [3] | DESCRIPTION OF OBJECT OR ITEM | [3]IDENTIFIED | [3]EVIDENCE | [3]RULING | [3]WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 16 | | Murphy Damages Summary (to be updated when Defendant supplies updated earnings and benefits information for Twp. Manager's Position from 2010 to present | | | | |
| 17 | | Zienkowski resolution and Employment Contract | | | | |
| 18 | | Mair email dated June 30, 2009 | | | | |
| 19 | | Fisher email dated July 6, 2009 | | | | |
| 20 | | Masterson Call List | | | | |
| 21 | | Masterson Notes from Murphy Interview | | | | |
| 22 | | Masterson Notes of interview schedule | | | | |
| 23 | | Masterson Markup of Olpere Summary of Murphy Application and related documents | | | | |
| 24 | | Andrew Mair – Olpere Summary, Job Application and related documents | | | | |
| 25 | | Robert Zienkowski – Olpere Summary, Job Application and related documents | | | | |
| 26 | | David Kraynik – Olpere Summary, Job Application and related documents | | | | |

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 27 | | Peter J. Miller – Olpere Summary, Job Application and related documents | | | | |
| 28 | | Christopher R. Canavan – Olpere Summary, Job Application and related documents | | | | |
| 29 | | Jack Layne, Jr. – Olpere Summary, Job Application and related documents | | | | |
| 30 | | J.J. Murphy – Olpere Summary, Job Application and related documents | | | | |
| 31 | | Debra A. Fourre – Olpere Summary, Job Application and related documents | | | | |
| 32 | | Plaintiff's Complaint | | | | |
| 33 | | Defendant's Answer to Plaintiff's Complaint | | | | |
| 34 | | Plaintiff's First Set of Interrogatories to Defendant | | | | |
| 35 | | Defendant's Answers to Plaintiff's First Set of Interrogatories | | | | |
| 36 | | Plaintiff's First Request for Production of Documents to Defendant | | | | |

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 37 | | Defendant's Responses to Plaintiff's First Request for Production of Documents | | | | |
| 38 | | Deposition Transcript – J.J. Murphy | | | | |
| 39 | | Deposition Transcript – John Granger | | | | |
| 40 | | Deposition Transcript – Enrique Hervada | | | | |
| 41 | | Deposition Transcript – Kevin Higgins | | | | |
| 42 | | Deposition Transcript – Harry G. Mahoney | | | | |
| 43 | | Deposition Transcript – Thomas Masterson | | | | |
| 44 | | Deposition Transcript – William Spingler | | | | |
| 45 | | Deposition Transcript – John Fisher | | | | |
| 46 | | Deposition Transcript – Dan Olpere | | | | |

Plaintiff reserves the right to introduce any exhibits identified by the Defendant and additional exhibits upon notice to the Defendant